UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**DAVID FLORES JR ET AL**  :  **CASE NO. 2:21-CV-04021**

**VERSUS**  :  **JUDGE JAMES D. CAIN, JR.**

**SOUTHERN RESPONSE SERVICES INC ET AL**  :  **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion to Dismiss and Motion to Strike [doc. 10] filed by defendant Belfor USA Group Inc. ("Belfor"), seeking dismissal of all claims raised against it in this putative collective action brought under the Fair Labor Standards Act ("FLSA") and Louisiana Wage Payment Act ("LWPA"). Plaintiffs oppose the motions.[1] Doc. 16.

## I.
### BACKGROUND

This suit arises from work done by plaintiffs David Flores, Jr. and Matthew Sirmon for Southern Response Services, Inc. ("SRS"), a subcontractor of Belfor. Plaintiffs allege as follows: They are hourly non-exempt employees who were hired by defendants as general laborers after Hurricane Laura in 2020. Doc. 13, att. 1, ¶ 26. Defendants employed at least as many as 100–150 workers for their disaster restoration work in Calcasieu Parish and the surrounding areas, and possibly over 2,000 workers throughout the state. *Id.* at ¶¶

---

[1] As Belfor points out, plaintiffs filed their response three days past the deadline set in the Notice of Motion Setting and did not seek or obtain permission from the court for this delay. Doc. 19, p. 1. The court will not resort to striking the response at this point but cautions plaintiffs that this relief may be granted for any further untimely filings.

32–33. Flores contracted to work for $12/hour, with time and a half over forty hours per week, plus $15/day per diem, food and lodging, and three hours' compensation for time spent traveling to and from the work site, with a predicted work schedule of 11 hours per day, seven days per week. Doc. 13, att. 1, ¶ 27. Sirmon was hired on a promise of wages of $1,000/week, $100/day per diem, travel time from Alabama, travel time for daily commute, and housing expenses. *Id.* at ¶ 29. After their arrival on August 30, 2020, plaintiffs were housed at a motel in Beaumont, Texas, and promised reimbursement for their travel expenses, which they never received. *Id.* at ¶¶ 28, 30. SRS and Belfor exerted "extensive and continuous control" over the manner in which plaintiffs and other hourly non-exempt employees conducted their work, including their arrival times, daily schedules and assignments, sign-in/out procedures, discipline procedures, employee meal and rest breaks, commutes, requiring employees to return to the work site after they had clocked out for meetings, and conditions for termination. *Id.* at ¶ 31.

Plaintiffs further allege that they and other similarly situated employees were required to take company vans from the motel to their work sites and were not paid for the wait time or commute. *Id.* at ¶ 34. They were not given lunch and dinner did not come until 11:00 pm at the motel, where defendants only provided enough food for about one quarter of the workers employed. *Id.* at ¶ 36. Payroll was provided through a RapidCard and employees were assessed a fee of $3.00 each time they withdrew money from their accounts. *Id.* at ¶¶ 35, 41–42. Defendants did not maintain a time clock, did not compensate employees for their commutes as promised, and regularly shaved time off from shift schedules. *Id.* at ¶¶ 34, 45, 48–49.

Plaintiffs filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, against Belfor and SRS, raising the following claims against both defendants: (1) failure to pay minimum wages as required by the FLSA; (2) failure to compensate for all hours worked as required by the LWPA; (3) failure to pay overtime for all hours worked as required by the FLSA; (4) failure to pay overtime for all hours worked as required by the LWPA; (5) failure to reimburse preemployment expenses as required by the FLSA; (6) failure to keep records as required by the FLSA; (7) unfair trade practices under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"); and (8) unjust enrichment. *Id.* at ¶¶ 61–157. In an amended complaint they add a claim under Louisiana worker's compensation law based on defendants' alleged retaliatory discharge of Flores after he was injured on the job. *Id.* at pp. 86–87. They also raise claims of breach of employment contract and detrimental reliance against SRS alone. *Id.* at ¶¶ 123–39. Finally, they seek to represent a class consisting of a following on their claims:

> All former employees of the Defendants between August 2020 and December 2020, who came to Lake Charles to provide labor arising from Hurricane Laura, who suffered economic damages as a result of the acts and/or omissions of the named Defendants' mismanagement and for failure to pay wages, seeking recovery of unpaid overtime wages, engaged in unlawful business practices from David Flores, Jr., Matthew Sirmon and its members.

*Id.* at ¶ 18 (*sic*).

Belfor removed the complaint to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. It now moves to dismiss all claims raised against it under Federal Rule of Civil Procedure 12(b)(6) and to strike the class allegations based on the following assertions: that (1) plaintiffs have failed to show that Belfor was their

employer; (2) the claims are not suitable for class treatment under Rule 23; and (3) plaintiffs have failed to state a claim against Belfor under the LWPA. Doc. 10, att. 1. Plaintiffs oppose the motions. Doc. 16.

## II.
## LAW & APPLICATION

### A. Rule 12(b)(6) Standards

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

B. Application

1. **Employer Status**

Belfor first asserts that the LWPA and FLSA claims against it fail because plaintiffs have not alleged enough facts to show an employee-employer relationship. Both the LWPA and the minimum wage and overtime provisions of the FLSA obligate employers to pay certain wages owed to their employees. La. Rev. Stat. § 23:631; 29 U.S.C. §§ 206–07. Accordingly, a plaintiff must allege that he was employed by the defendant during the relevant time period in order to state a claim under either statute. *Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Bergeron v. Ochsner Health Sys.*, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017).

Louisiana courts use a five-factor test to evaluate whether an employer/employee relationship exists under the LWPA, with a focus on the employer's right to exercise control over the employee's performance. *Mendoza v. Essential Quality Constr., Inc.*, 691 F.Supp.2d 680, 686 (E.D. La. 2010). Meanwhile, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The court evaluates employer status with an economic reality test, balancing four factors. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012). To this end it evaluates which entity: (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.*

Plaintiffs have raised numerous examples of the manner in which both Belfor and SRS allegedly controlled their performance and exercised authority over the essential terms

of their employment. *See* doc. 13, att. 1, ¶ 31. As district courts have noted, "[t]he contention that a particular defendant is an employer 'is the very definition of a factual allegation upon which plaintiffs are entitled to offer proof." *Rodriguez v. Gold & Silver Buyers, Inc.*, 2013 WL 5372529, at *3 (S.D. Tex. Sep. 24, 2013) (quoting *Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007)); *see, e.g.*, *Mejia v. Bros. Petrol., LLC*, 2015 WL 3619894, at *3–*4 (E.D. La. Jun. 9, 2015) (cursory allegation of employer status sufficient under FLSA claim); *Bodnar v. Newport Corp. of La.*, 2011 WL 4575122, at *4–*5 (E.D. La. Sep. 29, 2011) (same, under the LWPA). Accordingly, plaintiffs' allegations at the pleading stage are sufficient to support Belfor's potential liability as employer.

### 2. Class Allegations

Belfor next argues that the claims raised against it should be dismissed because they are not suitable for class treatment under Federal Rule of Civil Procedure 23. At the outset the court notes that only plaintiffs' state law claims are subject to certification under Rule 23 while class treatment of the FLSA claims must be pursued as a collective action under 29 U.S.C. § 216(b). As federal courts have long recognized, representative suits under the FLSA preempt Rule 23 and its requirements. *See* C. Wright & A. Miller, 7A *Fed. Practice and Procedure* § 1754 (3d ed.). Accordingly, these arguments do not apply to the four claims raised under the FLSA.

As for the state law claims, however, the court can require under Rule 23(d) "that the pleadings be amended to eliminate allegations about representations of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Additionally, "[w]here it is facially apparent from the

pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). This relief is only granted in rare cases, however, and generally denied as premature when no discovery has yet taken place. *Starling v. J. Wales Home Solutions, LLC*, 2022 WL 1156021, at *2 (N.D. Tex. Apr. 19, 2022) (citing *Delarue v. State Farm Lloyds*, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010)) (collecting cases); *see also Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.*, 2018 WL 1377608, at *6 (E.D. La. Mar. 19, 2018) (denying motion to strike as premature because discovery had not commenced and plaintiff had not yet sought class certification).

To proceed with a class action a plaintiff must satisfy the threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) as well as one of the grounds provided in Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Belfor argues that the class allegations should be stricken in this matter because "the claims pled fail to state a claim under any of the potentially applicable Rule 23(b) standards." Doc. 10, att. 1, pp. 13–14. Rule 23(b) provides as follows:

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>> **(1)** prosecuting separate actions by or against individual class members would create a risk of:
>>> **(A)** inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>> **(B)** adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

> **(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Belfor argues that, from the face of the complaint, plaintiffs cannot meet their burden under Rule 23(b)(2) or (3). Plaintiffs respond that they are not basing their claims on Rule 23(b)(2) and the court agrees that the arguments under those requirements are therefore moot.

As for Rule 23(b)(3), Belfor argues that individualized determinations as to class members' employment status, entitlement to damages, and calculation of same will predominate and preclude certification. On employment status, Belfor cursorily asserts that "[t]he legal standard will differ between the claims based on federal versus state law, and the factual inquiry for each plaintiff will depend entirely on the specific circumstances surrounding the jobsite, the subcontractor, [and] the set of work protocols on differing dates." Doc. 10, att. 1, p. 18.

At the outset the court notes that the class appears to be defined as those workers employed by both Belfor and its subcontractor SRS; accordingly, the potential for

individualized issues relating to different subcontractors is eliminated. As for entitlement to damages and calculation of damages, plaintiffs have alleged differing terms of employment and it is possible that terms of employment also differed among the prospective class members. But plaintiffs have also alleged, in common and with respect to the class, that defendants shorted them across the board by failing to pay commute times, shaving off hours, failing to provide the meals they had promised, and further docking their pay through the Rapid Card system.

It is too early for the court to determine the relationship between individualized and generalized claims in this matter. Furthermore, as the Fifth Circuit recently emphasized, a need to calculate damages on an individual basis will not necessarily preclude class certification. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710–11 (5th Cir. 2020). The issue turns on whether the damages of each plaintiff can be determined by mathematical or formulaic calculation. *Id.* Where the claims "focus almost entirely on facts and issues specific to individuals rather than the class as a whole, the potential that the class action may degenerate in practice into multiple lawsuits separately tried renders class treatment inappropriate." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) (cleaned up). Accordingly, the court will not resort to the drastic remedy of striking class allegations and will instead leave this determination for the class certification stage.

### 3. LWPA claims

Finally, Belfor asserts that the LWPA claims against it must be dismissed as a matter of law. The LWPA "creates liability for an employer who fails to timely pay wages owed to an employee after the employee voluntarily leaves employment." *Becht v. Morgan Bldg. & Spas, Inc.*, 843 So.2d 1109, 1111–12 (La. 2003). To state a claim a plaintiff must show that (1) the defendant was his employer, (2) the employment relationship ended, (3) the plaintiff was owed wages when the employment ended, and (4) the defendant failed to submit the amount owed within the statutorily mandated 15 days. *Dillon v. Toys R Us Delaware Corp.*, 2017 WL 2351490, at *2 (La. Ct. App. 4th Cir. May 31, 2017). To recover for penalty wages and attorney fees under the LWPA, a plaintiff must additionally show that demand for payment was made where the employee was customarily paid and the employer did not pay upon demand. *Becht*, 843 So.2d at 1112.

In addition to the employer status allegations handled above, Belfor asserts that the LWPA claims fail because plaintiffs have not alleged that they made demand for payment after their separation. However, demand is only required to state a claim for penalty wages and attorney fees and not to assert a claim for unpaid wages itself. *Bergeron v. Ochsner Health Sys.*, 2017 WL 3648451, at *3–*4 (E.D. La. Aug. 24, 2017). In their opposition plaintiffs state that they satisfied this requirement through a demand letter sent to both SRS and Belfor on January 15, 2021. Doc. 16, pp. 15–16. While Belfor contests the adequacy of this letter, the court agrees that there are no grounds for considering it within the scope of Rule 12(b)(6). Accordingly, any ruling on plaintiffs' ability to meet their burden on the penalty wages and attorney fees claim under the LWPA must await summary judgment.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss and Motion to Strike [doc. 10] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 29th day of August, 2022.

*/s/ James D. Cain, Jr.*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**