UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**DAVID FLORES JR ET AL**  :  **CASE NO. 2:21-CV-04021**

**VERSUS**  :  **JUDGE JAMES D. CAIN, JR.**

**SOUTHERN RESPONSE SERVICES INC ET AL**  :  **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 48] filed by defendant Southern Response Services, Inc. ("SRS") and joined by defendant Belfor USA Group Inc. ("Belfor"), seeking dismissal of certain claims raised in this putative collective action. Plaintiffs oppose the motion. Doc. 58.

## I.
### BACKGROUND

This suit arises from work done by plaintiffs David Flores, Jr. and Matthew Sirmon for SRS, a subcontractor of Belfor. Plaintiffs allege as follows: They are hourly non-exempt employees who were hired by defendants as general laborers after Hurricane Laura in 2020. Doc. 13, att. 1, ¶ 26. Defendants employed at least as many as 100–150 workers for their disaster restoration work in Calcasieu Parish and the surrounding areas, and possibly over 2,000 workers throughout the state. *Id.* at ¶¶ 32–33. Flores contracted to work for $12/hour, with time and a half over forty hours per week, plus $15/day per diem, food and lodging, and three hours' compensation for time spent traveling to and from the work site, with a

predicted work schedule of 11 hours per day, seven days per week. Doc. 13, att. 1, ¶ 27. Sirmon was hired on a promise of wages of $1,000/week, $100/day per diem, travel time from Alabama, travel time for daily commute, and housing expenses. *Id.* at ¶ 29. After their arrival on August 30, 2020, plaintiffs were housed at a motel in Beaumont, Texas, and promised reimbursement for their travel expenses, which they never received. *Id.* at ¶¶ 28, 30. SRS and Belfor exerted "extensive and continuous control" over the way plaintiffs and other hourly non-exempt employees conducted their work, including their arrival times, daily schedules and assignments, sign-in/out procedures, discipline procedures, employee meal and rest breaks, commutes, requiring employees to return to the work site after they had clocked out for meetings, and conditions for termination. *Id.* at ¶ 31.

Plaintiffs further allege that they and other similarly situated employees were required to take company vans from the motel to their work sites and were not paid for the wait time or commute. *Id.* at ¶ 34. They were not given lunch and dinner did not come until 11:00 pm at the motel, where defendants only provided enough food for about one quarter of the workers employed. *Id.* at ¶ 36. Payroll was provided through a RapidCard and employees were assessed a fee of $3.00 each time they withdrew money from their accounts. *Id.* at ¶¶ 35, 41–42. Defendants did not maintain a time clock, did not compensate employees for their commutes as promised, and regularly shaved time off from shift schedules. *Id.* at ¶¶ 34, 45, 48–49.

Plaintiffs filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, against Belfor and SRS, raising the following claims against both defendants: (1) failure to pay minimum wages as required by the Fair Labor Standards Act ("FLSA");

(2) failure to compensate for all hours worked as required by the Louisiana Wage Payment Act ("LWPA"); (3) failure to pay overtime for all hours worked as required by the FLSA; (4) failure to pay overtime for all hours worked as required by the LWPA; (5) failure to reimburse preemployment expenses as required by the FLSA; (6) failure to keep records as required by the FLSA; (7) unfair trade practices under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"); and (8) unjust enrichment. *Id.* at ¶¶ 61–157. In an amended complaint they add a claim under Louisiana worker's compensation law based on defendants' alleged retaliatory discharge of Flores after he was injured on the job. *Id.* at pp. 86–87. They also raise claims of breach of employment contract and detrimental reliance against SRS alone. *Id.* at ¶¶ 123–39. Finally, they seek to represent a class consisting of a following on their claims:

> All former employees of the Defendants between August 2020 and December 2020, who came to Lake Charles to provide labor arising from Hurricane Laura, who suffered economic damages as a result of the acts and/or omissions of the named Defendants' mismanagement and for failure to pay wages, seeking recovery of unpaid overtime wages, engaged in unlawful business practices from David Flores, Jr., Matthew Sirmon and its members.

*Id.* at ¶ 18 (*sic*).

Belfor removed the complaint to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. It then moved to dismiss all claims raised against it under Federal Rule of Civil Procedure 12(b)(6) and to strike the class allegations based on the following assertions: that (1) plaintiffs have failed to show that Belfor was their employer; (2) the claims are not suitable for class treatment under Rule 23; and (3)

plaintiffs have failed to state a claim against Belfor under the LWPA. Doc. 10, att. 1. The court denied the motions. Docs. 40, 41.

SRS now brings a Motion to Dismiss, asserting that (1) plaintiffs' claims relating to minimum wage and overtime compensation under the LWPA are preempted by the FLSA; (2) neither the FLSA nor Louisiana law gives plaintiffs a cause of action against defendants for record-keeping violations; (3) plaintiffs' allegations are outside LUTPA's narrow scope; and (4) plaintiffs' claim for unjust enrichment is improper. Doc. 48. Belfor joins in the motion and plaintiffs oppose same. Docs. 57, 58.

## II.
### LAW & APPLICATION

**A. Rule 12(b)(6) Standards**

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*,

495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

B. **Application**

1. **FLSA preemption**

Under Count 2, plaintiffs have alleged that defendants are liable under the FLSA and LWPA for failing to compensate them for all hours worked. Doc. 1, att. 1, ¶¶ 68–86. Under Counts 3 and 4, plaintiffs have alleged that defendants are liable under the FLSA and LWPA for failing to pay them "for all hours worked, including minimum wages, regular, overtime hours, and reimbursement expenses, per diem[.]" *Id.* at ¶ 103. Defendants move for dismissal of these claims, to the extent raised under the LWPA, on the grounds that they are preempted by the FLSA.[1] Plaintiffs allege, however, that separate and viable LWPA claims exist under each count based on the parties' alleged agreements that plaintiffs would be compensated for waiting and travel time, which may not prove compensable under the FLSA. Doc. 58.

The minimum wage and overtime provisions of the FLSA, 29 U.S.C. §§ 206–07, obligate employers to pay certain wages to their employees and preempt state law and penalties on claims of legal entitlement to compensation. *Bell v. Associated Wholesale*

---

[1] Defendants also refer to LWPA allegations in Counts 1 and 5, which are based on their alleged failure to pay minimum wages and overtime wages as well as to compensate for pre-employment expenses. The only reference to the LWPA within the claims, however, is based on the defendants' insurers' coverage for any LWPA or FLSA violation. *See* doc. 1, att. 1, ¶¶ 63–64, 119–20. Accordingly, there are no LWPA claims to be dismissed under either count.

*Grocers, Inc.,* 2019 WL 1979935, at *1 (E.D. La. 2019) (citing *Divine v. Levy,* 36 F.Supp. 55, 58 (W.D. La. 1940)). In other words, where the FLSA applies, the LWPA cannot be used to pursue a claim of legal entitlement to wages. *England v. Adm'rs of the Tulane Educ. Fund*, 2016 WL 6520146, at *6 (E.D. La. Nov. 3, 2016). The LWPA, however, creates liability for failure to pay wages "then due under the terms of employment" upon an employee's discharge. La. Rev. Stat. § 23:631. When a plaintiff presents claims for overtime under both statutes, the FLSA claim preempts state law for employees engaged in interstate commerce. *See, e.g.*, *Bell v. Associated Wholesale Grocers, Inc.*, 2019 WL 1979935, at *1 (E.D. La. May 3, 2019); *Little v. Mizell*, 2016 WL 3430489, at *4 (E.D. La. June 22, 2016). However, "[p]reemption does not apply when a plaintiff is seeking unpaid 'wages' for items that do not affect minimum wage or overtime, such as unpaid vacation time. It also appears that a plaintiff may maintain a LWPA claim for unpaid hourly wages if the claim only involves workweeks of forty hours or less." *Hampton v. McDermott Int'l, Inc.*, 2019 WL 5617025, at *3 (W.D. La. Oct. 30, 2019) (citations omitted).

Here plaintiffs have alleged agreements with their employer(s) that they would be compensated for certain activities, regardless of whether those activities amount to compensable labor under the FLSA. They have also alleged that the employer(s) agreed to pay overtime based on this scheme. Plaintiffs may indeed bring claims under the LWPA for non-payment of this time to the extent it impacted their base pay. However, as described under the case law above, their claim to minimum or overtime wages based on these activities is still preempted by the FLSA. Accordingly, the motion will be granted in this regard and all claims for minimum and overtime wages under the LWPA will be dismissed.

### 2. Record-keeping violations

Under Count 8, plaintiffs allege that defendants are liable under Louisiana law, Louisiana Revised Statute 23:14, and the FLSA for failure to keep adequate records of their employees' hours worked. Doc. 1, att. 1, ¶¶ 140–45. Neither statute, however, creates a private right of action for the employee. *See Foster v. Jayden Hosp. LLC*, 2021 WL 4498558, at *5 (M.D. La. Sep. 14, 2021) (finding no private cause of action to enforce a Louisiana statute absent clear text providing for one, since the "the Louisiana legislature is well aware of how to create a private cause of action when it is so inclined."); *see also Castillo v. Givens*, 704 F.2d 181, 198 n. 41 (5th Cir. 1983) (the FLSA "contains no private enforcement mechanism if the employer fails to maintain such records"); *accord Pittman v. McClain's RV, Inc.*, 2013 WL 12139092, at *10 (E.D. Tex. June 12, 2013). Plaintiffs concede that no damages may be awarded based on this claim but argue that discovery should not be restricted into defendants' record-keeping practices on that basis. The court agrees. Accordingly, the motion will be granted in this regard without any implication for discovery.

### 3. LUTPA claim

Plaintiffs also bring a claim under the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statute 51:1401 *et seq*. Specifically, they allege that defendants misrepresented the compensation terms to their employees and that they were not given sufficient meals/money for meals or lodging as promised. Doc. 1, att. 1, ¶¶ 146–54. Defendants argue that this claim is a mere rehash of plaintiffs' claims raised under theories of breach of contract, detrimental reliance, and violation of the FLSA, and does

not fall within LUPTA's narrow scope. Plaintiffs maintain that their allegations show the kind of "egregious behavior" and intentional misconduct proscribed by the statute.

"To recover under LUTPA, a plaintiff must prove some element of fraud, misrepresentation, deception or unethical conduct." *Tubos de Acero de Mexico, S.A. v. American Intern. Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002) (internal quotations omitted). The courts have repeatedly held that the plaintiff must show the alleged conduct "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1059 (La. 2010). Still, the determination of what constitutes an "unfair trade practice" is left to the courts on a case-by-case basis. *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

Courts have repeatedly affirmed that LUTPA does not provide an alternate remedy for breach of contract, and thus dismissed claims fitting that mold where plaintiffs failed to allege particular incidents of unethical or fraudulent conduct in addition to the breach. *See Sarradet v. Riverbend Environmental Servs., LLC*, 2017 WL 3140743 (M.D. La. Jul. 24, 2017) (dismissing LUTPA claim based on employer's failure to fulfill terms set forth in offer letter); *see also Cheramie*, 35 So.3d at 1061–63 (rejecting plaintiff's LUTPA claim after it failed to produce any evidence of a conspiracy between client and competitor of plaintiff to lure away plaintiff's employees); *Cooper v. Primary Care Solutions, Inc.*, 2017 WL 1086186 (M.D. La. Mar. 21, 2017) (dismissing LUTPA claim for failure to allege specific fraudulent misrepresentations in connection with franchise investment scheme). Plaintiffs maintain, however, that this matter is distinguishable because they were lured

from out of state to work under deceptive conditions and because the conditions themselves—including sleeping in overcrowded hotel rooms and having their pay further docked, and in some cases inaccessible, through the use of a RapidCard system—were egregious in themselves. The court agrees, finding these allegations particularly serious and potentially supportive of a LUTPA claim if they are borne out in discovery.[2] Accordingly, the motion will be denied as to this claim.

### 4. Unjust enrichment

Finally, defendants move for dismissal of plaintiffs' unjust enrichment claim. Plaintiffs do not oppose the motion as to this claim. The Louisiana Civil Code provides: "A person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code art. 2298. The same article also emphasizes, however, that the remedy is subsidiary "and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." *Id.* Accordingly, a plaintiff must show the following to support a claim for unjust enrichment: (1) an enrichment to the defendant; (2) an impoverishment to the plaintiff; (3) a connection between the two; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the unavailability of any other remedy at law. *Carriere v. Bank of La.*, 702 So.2d 648, 658 (La. 1996). On the fifth element, it is the existence of another cause of action – rather than its likelihood of success or failure – that defines the availability

---

[2] Furthermore, defendants note that the defendant's motivation is a "critical factor" in a LUTPA claim and its actions should be undertaken "with the specific purpose of harming the competition." *IberiaBank v. Broussard*, 907 F.3d 826, 840–41 (5th Cir. 2018). Defendants' motivation cannot be determined at this stage of the litigation, but it is more than plausible that any alleged deceptive practices with respect to hiring workers for this lucrative and temporary disaster response were undertaken with the goal of gaining an unfair advantage over competitors.

of the remedy. *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 3d Cir. 2008). In other words, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff a right to recover under the theory of unjust enrichment." *Pine Grove Elec. Supply Co., Inc. v. Cat Key Constr., Inc.*, 88 So.3d 1097, 1101 (La. Ct. App. 5th Cir. 2012). Here plaintiffs have other remedies available, as raised in their complaint, for all the wrongs allegedly committed by defendants. Accordingly, the claim for unjust enrichment will be dismissed.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 48] will be **GRANTED IN PART** and **DENIED IN PART**. Accordingly, plaintiffs' claims for unjust enrichment, recordkeeping violations, and LWPA violations to the extent they are based on failure to pay overtime or minimum wages will be **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Chambers on the 27th day of October, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**